E-FILED
Wednesday, 10 October, 2007 10:43:56 AM
Clerk, U.S. District Court, ILCD

# United States District Court

CENTRAL DISTRICT OF ILLINOIS

FILED
OCT - 9 2007
JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA

v.

AMON PAUL CARLOCK

**CRIMINAL COMPLAINT**

CASE NUMBER: 07-3050-m

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about June 12, 2007 in Sang. Co. and elsewhere County, in the Central District of Illinois, defendant(s) did, (Track Statutory Language of Offense)

knowingly possess child pornography and travel in foreign commerce and engage in illicit sexual conduct with a minor

in violation of 18 United States Code, Section(s) 2252A(a)(5)(B), 2423(c)

I further state that I am a(n) ICE Special Agent and that this complaint is based on the following facts:

See Attached Affidavit

Continued on the attached sheet and made a part hereof:  ☑ Yes  ☐ No

s/ Michael F. Mitchell

Michael F. Mitchell
Name of Complainant

Signature of Complainant

Sworn to before me and subscribed in my presence,

October 9, 2007 3pm   at   Springfield, IL
Date                        City and State

Byron G. Cudmore
U.S. Magistrate Judge

s/ Byron G. Cudmore

Name & Title of Judicial Officer    Signature of Judicial Officer

# AFFIDAVIT

I, Michael F. Mitchell, being duly sworn, depose and state:

I am a Special Agent (SA), with the Department of Homeland Security, Immigration and Customs Enforcement (ICE), assigned to the Resident Agent in Charge in Springfield, Illinois. I have been employed as a Special Agent for over twelve years. As part of my daily duties as an ICE agent, I investigate criminal violations relating to child exploitation and child pornography including violations pertaining to the illegal production, distribution, receipt and possession of child pornography, in violation of 18 U.S.C. §§ 2252(a) and 2252A. I have received training in the area of child pornography and child exploitation, computer forensics and have had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256)[1] in all forms of media including computer media. I am the senior forensics specialist for the Special Agent in Charge, Chicago, Illinois, office and have conducted over 300 computer forensics exams since I began conducting computer forensics in 1995. I have also participated in the execution of over 50 search warrants, of which over half involved child exploitation and/or child pornography offenses.

---

[1] "Child Pornography means any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where – (A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct; . . . [or] (C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct." For conduct occurring after April 30, 2003, the definition also includes "(B) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from that of a minor engaging in sexually explicit conduct." 18 U.S.C. § 2256(8).

2. This Affidavit is made in support of an application for an arrest warrant for AMON PAUL CARLOCK (hereafter identified as PAUL CARLOCK), DOB 11/29/1949, SS# 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, for violations of 18 U.S.C. § 2252A(a)(5)(B), which makes it a crime to knowingly possess child pornography, which has traveled in interstate commerce via the Internet by means of a computer; and 18 U.S.C. § 2423(c), which makes it a crime to travel in foreign commerce and engage in illicit sexual conduct with another person.

3. I am familiar with the information contained in this Affidavit based upon the investigation I have personally conducted and based on my conversations with other law enforcement officers involved in this investigation.

4. Because this Affidavit is being submitted for the limited purpose of securing an arrest warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only those facts that I believe are necessary to establish probable cause for the arrest of PAUL CARLOCK for violations of 18 U.S.C. § 2252A and 2423(c). Where statements of others are set forth in this Affidavit, they are set forth in substance and in part.

5. The investigation has revealed that PAUL CARLOCK traveled to the Philippines working as a clown at the House of Joy (HOJ) orphanage where he took naked pictures of minor boys and had sexual contact with at least three of the boys at the orphanage, ages 9, 10 and 10. The investigation also revealed that there were at least twenty-one (21) child pornography movies on media seized from PAUL CARLOCK's residence on September 28, 2007, as a result of the execution of a Federal Search warrant.

## Details of Investigation

6. The information set forth below is provided as a broad overview of the investigation conducted to date. It does not include a listing of all investigative techniques employed or the full and complete results of any of the listed investigative efforts.

7. On June 12, 2007, A. Paul CARLOCK (DOB 11/29/1949) arrived at San Francisco International Airport (SFO) from Manila, Philippines aboard China Airlines (CI) flight number 4. CBP Officer Isaac Novoa referred CARLOCK for a routine baggage inspection. In the inspection area, CARLOCK told CBPO Daniel Relay that he owned all of the items in his possession, including the laptop computer he was carrying. CARLOCK told CBPO Relay that he is the only person with access to the laptop and that no one else had used it.

8. CARLOCK told CBPO Relay that he had traveled to San Isidro, Philippines to visit an orphanage named "House of Joy" (HOJ). CARLOCK said that he entertained the orphans at HOJ through his work as a clown. CARLOCK stated that he has visited HOJ in the past for the same purpose, and that the arrangements were made through a friend he made on the internet. CARLOCK further stated that he and his wife have been in the clown business for about ten (10) years and that they entertain children at birthday parties and hospitals. CARLOCK said that he had traveled alone to an orphanage in Mexico in 2002 to entertain orphans through clowning.

9. Because CARLOCK was returning from a country which is considered high risk for child sex tourism and child pornography, coupled with

the fact that CARLOCK's stated purpose for his trip put him in direct contact with young children, CBPO Relay deemed it appropriate to review the images on CARLOCK's digital media devices to ensure they did not contain any images of child pornography.

10. CBPO Relay enlisted the assistance of CBPO Joshua Fike to review CARLOCK's digital media devices. CBPO Fike reviewed the images on CARLOCK's digital camera and discovered numerous images of nude young males, appearing to be between the ages of five (5) and ten (10) years old, with exposed genitals. CBPO Fike also discovered more images of the same nature on one of CARLOCK's CD-R discs.

11. CBPO Relay reviewed the images on CARLOCK's laptop by using the computer's search function to search for image and video files. The search results produced numerous images similar to those on the digital camera and CD-R disc. The images of naked minor boys depicted them playing, showering, and sitting clothed but with genitals visible. Some of the children were posing, while others did not appear to be aware that they were being photographed. A majority of the images of naked minor boys viewed on the laptop appeared to be pictures taken at the orphanage. CARLOCK later confirmed this to be true.

12. CBPO Relay notified Supervisory Customs Officer (SCO) Tanai Saefong regarding the images he and CBPO Fike had discovered in CARLOCK's possession. CBPO Relay and SCO Saefong agreed that the images depicting nude young males with exposed genitals were images of child pornography.

CBPO Relay contacted ICE Special Agent (SA) Michael Appio and advised him of the circumstances of CARLOCK's border search.

13. At approximately 2215 hours, SA Appio arrived at SFO to interview CARLOCK. CARLOCK provided a written waiver of his Miranda rights and agreed to speak to SA Appio without legal counsel present.

14. CARLOCK said he photographed the naked minor Filipino boys whose images appeared on his laptop and digital camera. CARLOCK said the photos were taken while the boys were showering at an outdoor shower. CARLOCK also said that some photos were taken while the boys were swimming. CARLOCK explained that the reason the boys were naked was because "That's how they live."

15. CARLOCK said his usual modus operandi was to photograph children with his digital camera and then transfer the images to his laptop for "editing." CARLOCK explained that images containing the letter "a" at the end of their file name denoted edited images. Unedited images would contain the same file name minus the trailing "a". For example, an unedited image might be named 12345, while the edited version of the same image would be named 12345a. CARLOCK said he edits the photos "when I have time." CARLOCK said he has bad eyes and cannot clearly see images on the display screen of his digital camera and thus must transfer the images to the laptop for better viewing. CARLOCK said because of his impaired vision his laptop may contain some "inappropriate" images that were not yet edited. CARLOCK said he edited

"inappropriate" images to make them appropriate to show in Church as part of a slideshow.

16. CARLOCK defined "inappropriate" as a "picture of a child in any sexually suggestive position". CARLOCK said a child means a person under eighteen (18) years old.

17. SA Appio asked CARLOCK why he would transport images of naked minor boys through two (2) foreign countries (Philippines and Taiwan) to the U.S. when he knew the images were "of a child in any sexually suggestive position". CARLOCK said he intended to edit the images, but had not yet had the time. CARLOCK further explained that he wanted to use the images to show people in the U.S. that it is "so poor there they can't even afford clothes."

18. SA Appio reviewed numerous images saved on CARLOCK's laptop including images named Img_0750, Img_0749, and IMG_0304a. Img_0750 depicts a naked Filipino male who appears to be between seven (7) to nine (9) years old. He has his hands near his chest, his legs slightly spread, and is leaning back and to the right. CARLOCK provided the first name of the boy and said he is ten (10) years old. CARLOCK said he took this digital photo.

19. Img_0749 depicts a naked Filipino male who appears to be between five (5) to nine (9) years old. He has his left arm bent at a ninety (90) degree angle with his hand over his head and has his knees and legs slightly bent. CARLOCK provided the first name of the boy and said the boy is ten (10) or eleven (11) years old. CARLOCK said he took this digital photo.

20. IMG_0304a depicts a naked Filipino male who appears to be between five (5) to nine (9) years old. He is standing on a beach, has his arms and legs spread and is holding a yellow inner tube in his right hand. CARLOCK provided the first name of the boy and said he is nine (9) years old. CARLOCK said he took this digital photo.

21. SA Appio asked CARLOCK to explain why image IMG_0304a, an edited image according to CARLOCK's system, showed an image that was clearly not edited from "inappropriate" to appropriate enough to show in Church. CARLOCK could not give an adequate explanation and said he was still in the process of editing images on his laptop. The "unedited" version of this same picture, Img_0304, was also saved on CARLOCK's laptop. The only difference between the two pictures is that IMG_0304a, the "edited" image, is approximately twenty (20) percent larger than the "unedited" version.

22. A shortcut for a program called Evidence Eliminator was found within a folder named "Online" that was on CARLOCK's computer desktop. CARLOCK said he utilizes this program to eliminate files he no longer uses. CARLOCK said Evidence Eliminator clears up disk space and speeds up his laptop. CARLOCK said a former co-worker told him to purchase it. According to their website (www.evidence-eliminator.com), Evidence Eliminator "defeats EnCase and other Forensic Analysis equipment as used by investigators, police and government agencies."

23. SA Appio told CARLOCK that in his investigative experience, individuals who have pictures of naked children on their computer often use the

Evidence Eliminator or similar programs to hide evidence of their illegal activity. CARLOCK adamantly denied he has ever been involved in child pornography and said he had never had any sexual contact with children.

24. SA Appio asked CARLOCK if he was a parent and CARLOCK said he had grown children. SA Appio asked CARLOCK how he would feel if a stranger took naked photographs of his children when they were about the same ages as the orphans CARLOCK photographed. CARLOCK said he would not have liked that. SA Appio then asked CARLOCK if it was not OK for a stranger to photograph his children, why did he (CARLOCK) think it was OK for him to photograph another parent's children. CARLOCK again said, "That's how they live."

25. CARLOCK said he was returning from a visit to the HOJ orphanage in the Philippines where he entertained the children by "clowning". CARLOCK said he had performed this same service at HOJ in 2004. CARLOCK said he "spent a lot of money" and brought first aid equipment to HOJ. CARLOCK said he had a great reputation at HOJ. CARLOCK said he discovered HOJ through a free orphanage page that contained links to websites of orphanages. CARLOCK said he visited the El Sazul Orphanage in Mexico in or about 2002 and clowned there as well.

26. CARLOCK's stage name is "Klutzo the Clown" and he performs magic under the name "Professor Paul the Magician". CARLOCK said he has been clowning for approximately ten (10) years. CARLOCK said his wife clowns

under the name "Smilee" but she has not traveled overseas with him to clown at orphanages.

27. CARLOCK said he spent over twenty (20) years working in law enforcement both full- and part-time. CARLOCK said he spent approximately three (3) years as a Group Juvenile Counselor with the Illinois Department of Corrections - Juvenile (DOC), approximately six (6) years as a trainer with DOC, approximately six (6) years in the Springfield, IL Police Department (two years patrol and four years Youth Division detective), and approximately six (6) years with the Illinois Department of Revenue. CARLOCK also said he worked approximately four (4) years in the Illinois Department of Public Health Child Health Division.

28. CARLOCK said as a result of problems he had with his supervisor at the Department of Revenue, he became suicidal and spent time in a psychiatric ward. CARLOCK said because of the time he spent in the psychiatric ward, he is banned from owning a gun for five (5) years.

29. According to CARLOCK's clown website (www.clowncapers.esmartkid.com), he is an ordained minister formerly with the Church of the Nazarene and currently with Missionary Church International. CARLOCK's website also states he has been involved in pastoral ministry, Christian education, Christian camping and evangelism since 1967.

30. CARLOCK reported his home address as 2330 Hedge Lane, Springfield, IL 62707. This address is shown on CARLOCK's Illinois driver's license (number C642-0154-9339) and U.S. passport application dated July 26,

2002. CARLOCK said he lives with his wife and gave their home phone number as (217) 789-0721. Open source queries show this phone number is associated with Paul CARLOCK at 2330 Hedge Lane, Springfield, IL 62707. CARLOCK told CBP officers that he has three (3) more computers at his home.

31. The interview with CARLOCK concluded at approximately 2350 hours. All of CARLOCK's digital media devices were detained by CBP pending further review at the ICE Computer Forensic Lab in San Francisco.

32. On September 13, 2007, SSA Julius Arambulo, Philippine National Police (PNP) Officer 2, Ruth Castillones, and Philippine Municipal Social Welfare and Development Office, Social Welfare Officer 1 Ana Brenda A. Buga-ay, interviewed three minors, ages 9 years old (Identified by CARLOCK in Paragraph 20), 10 years old (Identified by CARLOCK in paragraph 19), and 10 years old (Identified by CARLOCK in paragraph 18), in the presence of their legal guardian and owner/director of House of Joy. It should be noted that the owner of HOJ indicated he was aware of CARLOCK's photos being confiscated by the CBP at the airport. When asked if he had seen the photos, the owner indicated he did because CARLOCK provided him copies. When asked how he feels about the photos provided to him by CARLOCK, the owner indicated he found them okay. When the owner of HOJ was shown copies of the confiscated photos, however, the owner stated that he does not have copies of these photos. He further indicated that he found the photos inappropriate and sexually suggestive and that CARLOCK had gained his trust because CARLOCK claimed he was a police officer and active Baptist church member. The owner further stated that

CARLOCK did not stay overnight elsewhere and that CARLOCK stayed at the HOJ all that time. The owner of the HOJ agreed to have the three minors interviewed one at a time.

33. All three minors made sworn statements in which they stated that they woke up to PAUL CARLOCK fondling and caressing their penis and that he walked out of the room when they awoke.

34. Your affiant searched Illinois Secretary of State database and located a record for A. PAUL CARLOCK Jr, born November 29, 1949, with a Illinois License C64201549339 with an address of 2330 Hedge Lane, Springfield, Illinois 62707.

35. Your affiant conducted a search of Accurint (Public Database Information) and located a record for PAUL CARLOCK, Jr, born November 29, 1949, SS# 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, 2330 Hedge Lane, Springfield, Illinois 62707, Sangamon County.

36. On September 26, 2007, your affiant obtained a Federal Search warrant for 2330 Hedge Lane, Springfield, Illinois, issued in the Central District of Illinois.

37. On September 28, 20007, a Federal Search warrant was executed at the residence on PAUL CARLOCK, 2330 Hedge Lane, Springfield, Illinois. As a result of the Federal Search Warrant, the following items were seized from PAUL CARLOCK:

    a. three computers;

    b. two external hard drives;

  c. three loose hard drives;

  d. digital cameras;

  e. digital camera media;

  f. compact disk; and

  g. DVD's

 38. PAUL CARLOCK's wife was interviewed by your affiant. The wife stated that CARLOCK is in the Springfield, Illinois Big Brother program, that he has had a 6 year-old boy assigned to him, and that he has been in the program for 2 months. The wife further stated that she thought that CARLOCK is in contact with the minor once or twice a week.

 39. Your affiant identified the minor through the Big Brother Big Sister Program and made arrangements to have him interviewed at the Child Advocacy Center, Sangamon County.

 40. The minor was interviewed and during the interview the minor stated that PAUL CARLOCK provided him with two DVD's. One of the DVD's had pictures of CARLOCK and the minor when they went fishing. The second DVD contained pictures of naked boys and girls from the Philippines.

 41. Your affiant recovered the DVD's from the minor's house. One of the DVD's did contain naked images of minor boys and girls.

 42. Your affiant conducted computer forensics on the computer media seized from PAUL CARLOCK's residence on September 28, 2007. Your affiant has located twenty-one (21) movies on six of the compact disks that contain child pornography. One of the movies is nine minutes (9) and thirty-two (32) seconds

in length and includes three minors. The individuals in the movie appear to be speaking German. One of the movies is thirteen (13) minutes and two (2) seconds in length and includes two minors. The individuals in the movie appear to be speaking a foreign language not yet identified. At least three of the movies appear to be webcam captures. All of these movies appear to depict minors engaged in sexually explicity conduct and such depictions, because of their apparent foreign origin, appear to have traveled in interstate or foreign commernce.

s/ Michael F. Mitchell

Michael F. Mitchell
Special Agent,
Department of Homeland Security
U.S. Immigration and Customs Enforcement
Office of Investigations

Subscribed and sworn
before me this 9th of October 2007   3എ

s/ Byron G. Cudmore

Byron G. Cudmore
United States Magistrate Judge
Central District of Illinois